**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| In re: ) | |
| ) | Case No. 03-30465 (PM) |
| USGen New England, Inc., ) | |
|                 Debtor. ) | Chapter 11 |
| ) | |
| ) | |
| USGen New England, Inc., ) | |
| ) | |
|                 Plaintiff, ) | Adv. Proc. No. 04-01001 |
| ) | |
|     v. ) | Docket No.: 1:04-cv-11235-wgy |
| ) | |
| Bear Swamp Generating Trust No. 1 LLC, ) | |
| et al., ) | |
| ) | |
|                 Defendants. ) | |

**HSBC BANK USA'S EMERGENCY MOTION FOR CLARIFICATION OF THIS COURT'S JUNE 3, 2004 ORDER REGARDING THE SUPBPOENA ISSUED TO MR. GEORGE LAGASSA**

HSBC Bank USA, solely in its capacity as successor Pass Through Trustee and successor Lease Indenture Trustee ("HSBC"), through its undersigned counsel, respectfully submits this Emergency Motion for Clarification of this Court's June 3, 2004 Order concerning the conduct of the deposition of third-party Mainstream Associates, Inc. ("Mainstream"), and its designated witness, Mr. George Lagassa ("Lagassa"), currently scheduled to be held at 9 a.m. on June 14, 2004.

**Preliminary Statement**

HSBC reluctantly seeks this Court's intervention in a discovery dispute that has emerged between it and Mainstream during the week since the Court issued its ruling requiring Mainstream to (1) produce certain documents responsive to HSBC's subpoena and (2) produce a

LITDOCS:555776.1

knowledge witness for a "*one day, seven hour deposition*." At that time the Court admonished the parties to cooperate in completing this discovery. Unfortunately, counsel for Mainstream has refused to cooperate and has repeatedly set arbitrary conditions on its compliance with the Court's order, necessitating this motion for relief. Specifically, Mainstream refuses to produce any documents until the scheduled start time for Lagassa's deposition, and insists that any time spent reviewing the documents after they are produced will be subtracted from the 7 hour deposition ordered by the court. The obvious purpose is to hamper counsel's ability to prepare and effectively conduct Lagassa's deposition. As set forth below, HSBC respectfully requests that the Court order Mainstream either to produce documents in advance of the deposition, or require Mainstream to pay the fees of additional attorneys who will review Mainstream's documents while the deposition is conducted. This motion is brought on an emergency basis because the discovery cutoff in the underlying Maryland adversary proceeding is June 15, 2004, and trial in that matter is scheduled to begin on June 21, 2004.

## Background

### A.    The Maryland Adversary Proceeding.

HSBC is a defendant in an adversary proceeding filed by USGen New England, Inc. ("USGen" or "the Debtor") in the United States Bankruptcy Court for the District of Maryland (Case No. 03-30465 (PM), Chapter 11, Adv. Proc. No. 04-01001) ("the Adversary Proceeding"). The Adversary Proceeding seeks to resolve the parties' disputes over the characterization of a certain "sale/leaseback" transaction that occurred in November 1998 and that involved a pumped storage hydroelectric facility, herein referred to as the "Bear Swamp Facility" or the "Facility." The parties disagree as to whether that transaction should be treated as a "true lease" or as a

disguised secured financing for purposes of Sections 365 and 502 of the Bankruptcy Code.

The reasonableness and, indeed, the bona fides of certain other valuations of the Facility that were prepared at the time of the "sale/leaseback" transaction and relied upon by the Debtor and others are an important factor in the determination of whether the "sale/leaseback" constitutes a true "lease" or a secured financing. Representatives of many other firms who did work with respect to the Facility have been subpoenaed and have produced documents and testimony: Deloitte & Touche LLP, Stone & Webster management Consulting, Inc., Hagler Bailly, Inc., Arthur Consulting Group and Black & Veatch.

Mainstream is a valuation and appraisal firm. Mainstream prepared a "Valuation and Appraisal Report" for the Bear Swamp Facility, effective January 1, 2000 ("the Valuation"), which is proximate in time to the other valuations. Mainstream submitted the Valuation to the town of Florida, Massachusetts for *ad valorem* tax assessment purposes. HSBC believes (and the scheduled deposition may confirm) that the Valuation was in fact solicited and paid for by the Debtor and its counsel. Discovery has revealed, for example, that a similar report prepared by Black & Veatch, and addressed to officials of the town of Rowe, Massachusetts, was in fact solicited and paid for by the Debtor and its counsel.

Mainstream's Valuation was produced by the Debtor during discovery. Mainstream's valuation conclusions are directly at odds with the valuation that the Debtor obtained in connection with the sale/leaseback transaction. Communications among Mainstream, the Debtor and the Debtor's agents and advisors, as well as Mainstream's own evaluative process and inquiries, may constitute or at least lead to relevant and admissible information regarding the value of the Facility and also regarding the Debtor's own belief that the Facility did not truly

have the value that was nominally ascribed to it for purposes of the sale/leaseback transaction.

The deposition discovery deadline in the Maryland adversary proceeding is June 15, 2004. Trial in this Adversary Proceeding is scheduled to commence on June 21, 2004.

**B.     The Subpoena Upon Mainstream.**

On May 6, 2004, HSBC issued a subpoena *ad testificandum* and *duces tecum* under Rules 30(b)(6) and 45 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.") to Mainstream ("the Subpoena"), setting a deposition and document production date for May 19, 2004. A copy of the subpoena is attached to the Affidavit of Stephen Vaccaro (hereinafter "Vaccaro Aff."), as Exhibit A. On May 18, 2004 – the day before the deposition was to take place – Mainstream, through its principal, Lagassa, filed a Motion to Quash pursuant to Fed. R. Civ. P. 45(c)(3)(B)(ii). Contrary to the Rules of this Court, Mainstream failed to confer with counsel for HSBC or otherwise to resolve the matter short of litigation. *See* Vaccaro Aff., at ¶ 4.

A hearing on Mainstream's motion to quash was held before this Court on June 3, 2004. At the hearing, the Court quashed the *subpoena duces tecum* in part, denied it with respect to paragraphs 2, 5, and 13 of the subpoena, and ordered HSBC to redraw its discovery more narrowly. The Court also ordered Mainstream to produce a witness for a "*one day, seven hour deposition*."

Since that time, the parties have agreed that the deposition will take place on Monday, June 10, but little else. This is because of the positions taken by Mainstream as to how it will comply with the discovery ordered by the Court. Mainstream has insisted that (1) neither Lagassa nor Mainstream's documents will be produced prior to 10:00 a.m. on June 14 because doing so would be burdensome to Mainstream; and (2) any time spent by counsel for HSBC

reviewing documents on Monday morning when they receive them, prior to beginning Lagassa's deposition, must be deducted from the 7 hours that Lagassa is available for questioning.

Counsel for HSBC has conferred with counsel for Mainstream repeatedly, by telephone and in writing, in an attempt to obtain production of Mainstream's documents prior to Lagassa's deposition.  *See* Vaccaro Aff., at ¶¶ 5-7; correspondence from Steve Vaccaro to Cara Daniels dated June 7 and 10, 2004 (attached to Vaccaro Aff. as Exhibits B, C).  Five days after being ordered by the Court to produce documents, counsel for Mainstream disclosed that it would not produce any documents until the scheduled start time of the Lagassa deposition.  In response, HSBC offered to pay Mainstream's costs in complying with the Court's Order.  Vaccaro Aff., Exhibit B, at 2; Vaccaro Aff., Exhibit C, at 2.  HSBC further requested that the deposition begin at 9 a.m. to allow additional time for review of documents if necessary.  Vaccaro Aff., at ¶ 5.  However Mainstream has not modified its initial position described above.

Ms. Daniels, counsel for Mainstream, has represented that as of June 10 Mainstream's documents are not in her possession and that she "might" provide some or all of them prior to the Lagassa deposition "but only if it is in [her] client's interest to do so."  Vaccaro Aff., Exhibit D, at 1; Letter from Cara Daniels to Steve Vaccaro (June 10, 2004) (attached as Exhibit D to Vaccaro Aff.).

**Argument**

The Court did not specifically order that Mainstream produce its documents prior to Lagassa's deposition, but it did require that Mr. Lagassa be made available for questioning for one day, up to 7 hours. The subject matter of the deposition is complex: Lagassa apparently appraised a power generation facility at a value of $325 million using multiple valuation methods including discounted cash flows, comparable sales, and replacement cost methods. In his appraisal, Lagassa states he held "extensive discussions" with representatives of the owners of the facility. Vaccaro Aff., Exhibit E (excerpt from Mainstream appraisal report). The documents produced from Mainstream's work file for this appraisal presumably will also be complex.

Clearly, Mainstream's plan of forcing HSBC to wait until 10:00 a.m. on Monday before beginning its review of the documents, and then deducting the time spent on review from the 7 hours of deposition time ordered by the court, is designed to thwart the effective deposition of Lagassa. This improper tactical aim is evident in counsel's candid admission that the Mainstream documents may be produced prior to deposition, but only if it is first determined that this will be in Mainstream's interests. The Court ordered Mainstream to cooperate in the discovery process, not only if it suited Mainstream's own purposes to do so, but (at the very least) to the extent required by the applicable rules of professional conduct.

Mainstream's position is wasteful of both HSBC's and Mainstream's time, and may preclude HSBC from obtaining the benefit of the Court's ruling. HSBC will likely be forced to have multiple attorneys attend Lagassa's deposition — one to ask questions, others to review documents—in order to avoid prejudice due to Mainstream's unreasonable tactics. HSBC will

be forced to choose between deposing Mainstream, or doing so efficiently and effectively. Mainstream is engaging in transparent gamesmanship in defiance of the spirit, if not the letter of the Court's order.

### **Conclusion**

For the foregoing reasons, HSBC respectfully requests that the Court enter an order compelling Mainstream to produce documents responsive to paragraphs 2, 5 and 13 in Attachment B to the HSBC subpoena, as ordered by this Court on June 3, 2004, in advance of the Lagassa deposition on June 14, 2004.

Alternatively, HSBC respectfully requests that Mainstream be required to pay the fees of the attorneys who will review the Mainstream documents on the morning of June 14th, while attorney Steve Vaccaro conducts the deposition of Lagassa, and to pay the fees and costs in connection with this emergency motion.

Dated: June 11, 2004

                                                    Respectfully submitted,

                                                    **HSBC Bank USA**

                                                    ___/s/_____
                                                    Charles L. Solomont  BBO# 557190
                                                    Siobhan E. Mee  BBO# 640372
                                                    Sean C. Flynn  BBO# 650506
                                                    BINGHAM McCUTCHEN LLP
                                                    150 Federal Street
                                                    Boston, MA 02110
                                                    Tel:  (617) 951-8000
                                                    siobhan.mee@bingham.com

>
> _____
> Steve Vaccaro
> DEBEVOISE & PLIMPTON LLP
> 919 Third Avenue
> New York  NY  10128
> (212) 909-6000
> (212) 909-6836

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1

I, Sean C. Flynn, hereby certify that counsel for HSBC Bank USA has contacted counsel for Mainstream Associates, Inc. in an effort to resolve or narrow the issues presented in this motion.

>
> _____
> Sean C. Flynn

## CERTIFICATE OF SERVICE

I, Sean C. Flynn, hereby certify that a true and correct copy of the foregoing document was served on all counsel in this matter by hand on or about June 11, 2004.

>
> _____
> Sean C. Flynn

LITDOCS:555776.1