UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In Re  USGen New England, Inc., <br> Debtor | ) <br> ) <br> ) Case No. 1:04-cv-11235-WOY |
| USGen New England, Inc. <br> Plaintiff | ) <br> ) <br> ) |
| Bear Swamp Generating Trust <br> No. 1 LLC, et al. <br> Defendant | ) <br> ) <br> ) |

FILED
IN CLERKS OFFICE

2004 JUN 17 P 12:33

U.S. DISTRICT COURT
DISTRICT OF MASS.

**MOTION OF MAINSTREAM ASSOCIATES INC. FOR RECONSIDERATION**

Mainstream Associates, Inc. hereby respectfully moves the Court for reconsideration of its order dated June 14, 2004, sanctioning the deponent in the amount of $1,000 for refusing to answer questions at a deposition. In support of this motion, Mainstream states the following:

1. On May 6, 2004, Mr. George Lagassa, the principal of Mainstream Associates, received a subpoena to testify and produce documents in the above-captioned matter. Mr. Lagassa, an appraiser of hydro-electric generating facilities, had previously been retained by the Town of Florida to appraise the Bear Swamp Facility ("the Project") for real estate tax purposes. Mr. Lagassa has never been retained by any party to this suit for the purpose of appraising the Project or rendering his opinion of value.

2. On May 18, 2004 Mr. Lagassa filed a Motion to Quash the Subpoena or for a Protective Order based on his status as an unretained expert, under F.R.C.P. 45 (c)(3)(B)(ii), on the ground that the anticipated questions at the deposition would call for him to reveal to his mental impressions and deliberative processes in performing his previous appraisal.

1

3.  On June 3, 2004, the Court heard argument on Mr. Lagassa's motion. After argument, the Court quashed all but three document requests, and ruled that the subject matter of Mr. Lagassa's testimony must be limited to issues of fact.

4.  The Court's June 3 ruling that the questioning must be limited to facts seems to have had the express purpose of protecting Mr. Lagassa's opinions and mental processes. The Court stated:

> *...[W]e're not quashing the deposition in its entirety because, as their opposition says, they say, though one doubts it having looked at this subpoena, that all they want is the facts.*
>
> *Now, your fellow can't resist testifying as to the facts. <u>What they are not allowed to get is his opinions or his mental processes beyond that conveyed to his then employer</u>.*
>
> *Let me make myself clear. They may take a one-day, seven hour deposition. I suggest that you get together on documents that he's to produce because they'll want the documents at the time of taking the deposition. At that deposition they may ask him every communication he had with everyone, every communication anyone had with him. They may ask what opinion did you express historically. They may ask, upon what documents did you rely...*
>
> *But beyond that you can't inquire. You can't inquire, well, why didn't you look at this? Or don't you consider this to be probative? Or questions like that.* (emphasis added).

5.  In consideration of the discovery deadline faced by the parties, Mr. Lagassa made himself available for deposition on June 14, 2004.

6.  Mr. Lagassa's attorney, Ms. Daniels, familiarized herself with the order prior to the deposition for the purpose of ensuring that the deposition would be conducted in conformity with the Court's ruling.

7.  At the deposition, Ms. Daniels objected to several questions which fell outside of the scope of questioning set by the Court. These questions and objections are as follows:

2

*PAGE 97*

Q: *Am I correct that you considered using new book cost as a basis for appraising the value of the Bear Swamp Facility?*

A. *I considered it enough to discuss it, yes.*

Q: *Why did you reject it?*

Ms. Daniels: *Objection. Don't answer that.*

*PAGE 61*

Q: *Did you consider intangible system benefits in your appraisal of BearSwamp, Fife Brook or Deerfield Five facilities?*

A: *No, I did not.*

Q: *Is that because intangible system benefits could not be a component of fair cash value of the plants?*

Ms. Daniels: *I'm going to object to that [further instructing witness not to answer].*

*PAGE 94*

Q: *Did you factor these property sales prices into the appraisal of the facilities?*

A: *No.*

Q: *Why?*

Ms. Daniels: *Objection. Don't answer that question.*

> *PAGES 70-73*
>
> *Q:* *Is this a principle of appraisal that you applied in preparing your report?*
>
> *A:* *It is a standard principle of appraisal. And yes, I did apply it.*
>
> *Q:* *And the principle is that the cost approach will identify the upper limit to value?*
>
> *A:* *No, The principle is that no rational person would pay more for an asset that he or she could reproduce it in a reasonable time period.*
>
> *Q:* *And as a corollary of that principle, then, the cost approach is considered to identify the upper limit to value?*
>
> *A:* *No, that would be my own conclusion.*
>
> *Q:* *Did you reach that conclusion in connection with your appraisal of the Bear Swamp Facility? [this conclusion is not set out in the report]*
>
> *Ms. Daniels:* *Objection. Don't answer that question.*

8.   Ms. Daniels' objections were made in good faith and were based on a reasonable interpretation of this Court's order of June 3, 2004. Mr. Vaccaro's questions exceeded the limitations set by this Court in its June 3rd order, necessitating Ms. Daniels' objections. It is respectfully suggested that the Court's conclusion that Ms. Daniels' instructions were improper is tantamount to concluding that the Court's June 3 order contained no meaningful boundaries on the scope of permissible questions, and that Ms. Daniels had no role to play in ensuring, for the benefit of her client, that the limitations of the Court's order were respected.

9.   Deposing counsel, Mr. Vaccaro, brought this issue before the Court during the deposition on June 14, 2004.

10. The Court determined that Ms. Daniels' objections and instructions not to answer were improper, that Mr. Lagassa must answer questions concerning his deliberative process at the time the report was created, the Court fined the deponent $1000, and the Court ordered the deposition to continue for one hour beyond the time set in the Court's June 3rd order.

11. In total, Mr. Lagassa testified for more than five hours and answered hundreds of questions. Mr. Lagassa answered all questions with the exception of the four attempted lines of questioning referenced above.

WHEREFORE, Mainstream Associates, Inc., third party deponent, respectfully requests that this Court vacate its order dated June 14, 2004 sanctioning the deponent in the amount of $1,000.

                              Mainstream Associates, Inc.
                              By its attorneys,

                              _/s/ Alan B. Rubenstein_
                              Alan B. Rubenstein, BBO #432400
                              Cara J. Daniels, BBO #647523
                              RACKEMANN, SAWYER & BREWSTER
                              One Financial Center
                              Boston, MA  02111
                              (617) 542-2300

Dated: June 17, 2004